Our next case is Wayland v. OSF Healthcare System, Appeal 23-1541. Mr. Baker, whenever you're ready. Good morning. May it please the Court, my name is John Baker, and I represent Mary Ann Wayland. We are asking this Court to reverse the grant of a summary judgment in an FMLA case. Before I get into too much of my argument, I want to address one of the claims that was brought up initially, and that is whether this is an interference or a retaliation claim under the FMLA. In my view, this is an interference claim. The regulations that govern the FMLA that are handed down by the Justice Department are quite broad, excuse me, Department of Labor, that are quite broad in what they consider to be interference. If it's an interference claim, where do we draw the line? And what I mean by that is, I don't think there's any dispute here that OSF did not interfere with her right to take FMLA leave. She took the leave, and the issue is, several months later, did they interfere with her leave by imposing burdens upon her that they didn't take into account the leave, right? So where do we draw the line? What if it had been a year later or two years later? And what I'm concerned about, the reason I ask this question is you can imagine a scenario where a plaintiff is having, or a person's having difficulty at work, they take FMLA leave, and the employer says, that's fine, you're entitled to take the leave, you can take the leave, and then they come back and they basically say, now I get a fresh start. And if I don't get a fresh start, interference is so broad that you have interfered with my right to take FMLA leave by punishing me for anything that happens absent an absolute fresh start. Well, and Judge Kirsch, I think you raise a good point, and factually it's challenging. The regulations themselves are quite broad, maybe too broad. I think the regulations speak in terms of any violation of these regulations constitutes interference. So in and of themselves they are broad, and maybe they're overly broad. But to go to your particular... So what do you call, I mean, what this case, I'm pushing back against the idea that we have to, or how tight these boxes are, I guess. Because it seems to me the essence of your argument is that although they nominally give her the time off that she's asked for, both the intermittent and the period of, I guess, just time off, they impose a price on that that they're not allowed to do. They can't have their fingers crossed behind their back and say, you know, oh, we've just decided that you've been absent too many days, and you violated our absenteeism policy, and therefore we're going to fire you. Or, you know, things that might flow from the FMLA. So how do we properly characterize something like this? Because, yes, she gets the leave, but they're not really giving her the full benefit of the time off that she was entitled to. And I think, Judge Wood, this court has answered that by describing that as being illusory. That the leave is illusory. Yes, we are giving it to you, but we are going to apply the same standard. Same standard, same number of work items a day, or the same number of days in attendance, or the same, whatever the same is for that employer. That's correct, Your Honor. And years ago, this court recognized that. There's a case from out of Fort Wayne where that was recognized. That was a librarian case where you can't say, hey, look, you have to complete at the same level or perform at the same level while you're on FMLA. If we do that, then taking the leave just becomes illusory. While you're on or after it's over? And is there a distinction? Well, that's a factual distinction of when it is being applied. And I think, Judge Kirsch, that's important in this case because my client took a block of FMLA in November and December. So, she's on there. Then she continues on and she's taking an intermittent leave. And so, just to be clear, the November and December, she's just at home. She's not at the workplace. I think that she came in one day for a meeting or something like that. Okay, but on the whole and by and large. And then when we get past that, she's on the one or two days a week off schedule. But yet, according to you, still with the expectation that she's somehow going to do like a full work week's worth. Judge, what the FMLA leave paperwork allowed her one to two days a week. I think, and Ms. Clark will correct me if I'm wrong, but I believe that what we found is that between maybe January 1st and May, she took a total of nine days off. So, she didn't take full advantage of what she was granted? She did not. She did not. But I think going back to what you're addressing, Judge Kirsch, and this is the fact or what the facts are. And I think that's where we get to a jury question here. Because they make much of this survey. This survey that is by employees. How satisfied are you? And it was bad. And so, their argument has been, and the district court accepted it, was look. She was bad before she went on leave. She was bad when she came back from leave. So, the fact that she's on leave has no real relevance. Can I ask you a question? Absolutely. I get the sense about the facts. I get the sense here that the FMLA leave was over when she went on the PEP. No. The block of FMLA leave was over. There was still an intermittent leave that was in effect that could have gone on until, I believe, October. I think it was a one-year intermittent FMLA that her doctor had signed that authorized her to go off on leave or to take time away. So, that one was still in. The block of leave, which was to take care of a parent, had expired. That was over. So, this intermittent leave, it was technically still in effect. She was, like I said, to answer Judge Wood's question, she only, I think, used it nine days during that period of time. But what we're really getting to is the fact that you go into November and December and there are all these issues going on at work. They're beginning to acquire this new hospital. There's this scrum process, this sprint, all of these new things that are being outlined. And they want to now come back and say, well, really, it's this NPOS survey. But the problem with that is the NPOS survey, yeah, it was bad. But after that, she had an annual review. Her review came out. The NPOS survey was considered in that. And it was fine. I mean, her review was that she was performing well. The comments are outlined in our brief. And so, I think that that's an important fact. You know, whereas the district court wants to look at it and say, well, she's bad before, she's bad now. But I don't think that they really looked at her as being a bad employee at that time. I think that what their assessment, you know, I think that's a convenient excuse now. But I think that's where we get to a jury question. And so, really, the question is, looking at this evidence, could a jury say, properly conclude, that they held Ms. Whalen to a higher standard than she should have been because they didn't take her leave into account? Mr. Baker, it seems like one of the big factual disputes is about how much time she took off. So, in the defendant's response brief, they say she took off a total of 10 days. That includes continuous and the intermittent. Ms. Whalen, in her deposition testimony, I think she said she recalls taking about three weeks. And in her affidavit, she says she took over six weeks. How do you account? Okay, let's take her affidavit. How do you account for this difference between the defendants? They claim on paper that they have records of 10 total days. And your client's saying, no, no, no, I took more than six weeks. Can you, I'm just trying to wrap my head around that dispute. Judge Lee, and I can't remember specifically where she said that in the deposition. And maybe that was, she was talking about her specific block of claim. Ms. Clark, I'm sure, will correct me if I'm wrong. But I don't think we ever had a list of here are the specific days that were taken off or she was gone from here to here. So, you know, we have my client's testimony, which says one thing. They have their testimony that says something else. But I just, I mean, usually in cases like this, you don't have such a wide discrepancy between, you know, the employer saying she only took 10 total days. And, you know, the claimant saying, no, no, no, I took more than six weeks. And I'm just trying to figure out, you know, is it because of the way it was recorded? Or is it because of the way she took the leave? I'm just trying to understand, like, what the reasoning might be behind the difference. And, Your Honor, I wish I could answer your question. I think it matters because, you know, obviously if she took 10 days, her expectations, the employer's expectations would be different than if she took six weeks off during the same time. I agree that it's important, but I also think that we're on summary judgment. And disputes of fact have to be resolved in favor of the employee and not in favor of the employer. And so to the extent that there is this dispute, I think that her version has to be credited at this procedural stage. So it's not that it's not relevant. It's just that if we're going to give inferences or reasonings, we need to err in favor of the plaintiff at this point. I see I only have 10 seconds left. Thank you very much. We ask that you reverse the decision in the District Court. Thank you, Mr. Baker. Thank you. Okay, Ms. Clark. Thank you. May it please the Court. Abby Clark on behalf of Appalee OSF Healthcare System. Your Honors, I completely agree that FMLA is a very important statute. It's critically important. Things come up in people's lives. It's necessary. OSF understands this. The organization has thousands and thousands of employees. FMLA is nothing new to OSF. It's routinely granted. It has not been an issue. And that was the situation in this case as well. And I think that Ms. Wayland acknowledged that. And we can see that factually in citations for that in the briefs. She says, listen, at no point was I ever denied leave I wanted to take, discouraged from taking leave I wanted to take. There weren't comments about my absences. There weren't comments about the fact that I wasn't in the office. She does specify, though, that, you know, had I not taken leave, which she characterized as six weeks, had I not taken all that time off, I would have been able to make much more progress on some of these projects that they had listed on the PIP, perhaps even the ones where, according to Ms. Wayland, you know, Ms. Bond or whoever even admitted that they would be unrealistic to me. So, Judge Lee, I think, though, the problem with that concept is that then we're really talking about a quintessential get-out-of-jail-free card. Why are we doing that? I mean, it seems one thing if somebody – let's just say hypothetically a normal work week is 40 hours and she can work 32 hours, so kind of one day off. If she is given that one day off under FMLA, but in terms of her evaluations and work expectations, she's still expected to turn in 40 hours' worth of work. She's just supposed to do it all in 32 hours. That's the problem that we've talked about in our earlier cases. And so that's not a get-out-of-jail-free. That's just saying, wait a minute, if you yourself have given me this time off, it really has to be time off. It can't be that I'm going to have a stroke from pressure trying to do 40 hours of work in the space of 32 hours. And I'm interested in whether taking the facts in the light most favorable to her at this point. There is a serious question about that. I looked at the excerpts from the transcript, and I kept finding her saying the kind of things that Judge Lee was talking about. If only I hadn't had – I was being asked to do too much, I fell behind. And so I don't see this as the get-out-of-jail-free scenario. That we've certainly disapproved. If you weren't performing well and you go on FMLA and you come back and you're still not performing well, you don't have some, you know, freebie that you get to keep the job. But I don't understand that to be her argument. Well, Judge Wood, I agree with that. If we're making widgets, if we've got performance expectation standards that are numerical-based, I agree 100% that an employer cannot hold an employee to the same production standards that they can if they are there for 40 hours a week. 100% I agree. But I think part of the issue in this case is that the plaintiff wants to argue what she could have done with respect to FMLA as opposed to what actually happened here. There was an issue that several of you had raised regarding the amount of time that she took. And if we look at the record evidence, she took nine days of continuous FMLA leave in November and December of 2018. Nine days. And we have an e-mail from Ms. Whalen that's talking with the HR department about, hey, these are my days, and that was November 14th and 15th, 20 and 21, 26 through 30. Okay, nine days of continuous leave. But isn't that, I mean, I understand that's what the record says and I've read those e-mails, but isn't that now a factual dispute? So in other words, you can cross-examine her with those e-mails at trial, but at this point in time, don't we have to take her declaration at its word? Well, Your Honor, I would say yes and no to the extent that there's substance behind it. A plaintiff just can't say anything they want in a deposition and create a factual dispute. Every plaintiff would go to trial. Exactly, Judge Kirsch, and that's the point that I'm getting to here. And as far as a factual dispute about the November time period, those are her e-mails. I mean, I don't know that she can create a factual dispute off of things that she specifically said. I mean, I guess I have a slightly different view on that. I guess if a person is prepared to lie under oath and create a factual dispute, you know, the lying under oath is a different issue, but there's no allegation here that she did so. And so if that's the case and, say, in a deposition she says, you know what, that's what the papers say, but tell you what, you know, my recollection is six weeks and more. District courts would do nothing but try prisoner cases. And, Judge, I understand what you're saying. In this case here, again, we've got the e-mails confirming those nine days. But do they disconfirm any other days? I mean, it's one thing to say those nine days happened, the e-mails, but how do they refute that other days might have been taken off? Those e-mails don't refute that, Judge. They can't, yeah, right. That may be the answer to what Judge Lee is talking about. But then we also have the declaration of Sharon Bond, who says, I manage these records, I looked at these records, and I specifically looked at what days she took intermittent FMLA leave in 2019, and that was one day, April 5th. And I understand what you're saying, Judge Lee, in terms of, well, if a plaintiff says they remember something different, they can testify about that. But the problem here is at the summary judgment stage, we do take the facts in light most favorable to the plaintiff. But do we know that every day she took off was FMLA? Some employers will say, oh, that's a personal day off, or that's a regular sick day off, not FMLA. Are there other classifications of days off? No. With respect to FMLA, Judge Wood, Sharon Bond in the HR department had specifically looked at that, and there's one day. And I think we can also see from those November emails that Ms. Whalen sent, she was very particular and very cognizant of what days were counted as what. And so the thing here is, I agree, we take the facts in light most favorable to the plaintiff, but at the same time, there's the concept that this is that put up or shut up moment. And what is the evidence of additional days that you're advancing? We don't have any. So, Judge Wood, you had asked about, hey, what does this intermittent leave look like? And if she's gone two days a week or three days a week, how are we? The thing is, she could have been gone that period of time, but she didn't take it. And so even at the time when we were talking about the performance improvement plan, there's no time that she actually took FMLA leave other than April 5th. And so to somehow say, oh, you know, if I hadn't taken the time, I might have done better, I could have possibly done better, that was really news to OSF. They'd never heard anything about a problem with respect to not having enough time. The complaints that were coming in weren't about the time that she was away. They were about the time she was in the office. We've got a mid-April. These are the integrity phone line. Exactly. Those integrity phone line calls are talking about not the fact that she's unavailable or that she's not there to manage people. It's that she, while she's in the office, is creating an unhealthy, hostile work environment. The employees are on pins and needles. All of these things that are happening are happening while she's in the office, not while she's away. So even, I think, Judge Lee, even if we say there's some sort of dispute, if we say just because she can stay six weeks, we're going to credit that, there's still no tie-in to what exactly to the issues that were coming up with respect to her continuing performance problems. There's still no tie-in with that FMLA leave time. She admits in her deposition, hey, I didn't complete the things in my performance improvement plan. We went through them. We talked about each of them. She does also indicate that it's one of these set-up-to-fail plans, though. Some outside consultant is supposed to do something, and she's being blamed for the fact that they didn't do it. And, Judge Wood, though, I think that she does mention that in her brief. She didn't talk about that in her deposition. However, I think that when we look at, again, the email traffic that's going back and forth, Ms. Whelan was participating in the dates surrounding that performance improvement plan. She was participating in the outcomes. She was helping her manager, Brandy Fisher, tweak the outcome items. So then to later say, I was involved, but the failures weren't my fault, I think is disingenuous. And she also testifies at various times in her deposition transcript where she says, yeah, you know what, I did this. I completed part of this. But then she says, no, I never told my supervisor. I never gave it to my supervisor, Brandy Fisher. I posted it, but I didn't bother to tell her that it was there. And so that's when we start looking at pretext. Is there something about this that Brandy Fisher, as her manager, had a problem with the FMLA leave? Is there something fishy going on here? And the evidence is just insurmountable in terms of the fact that things continue to escalate. Nothing got better. The integrity line calls continued. The performance improvement plan objectives that she helped work on, they weren't met. At what point, what's OSF supposed to do in this case? At what point do they have to say, well, we'll continue to accept this, because back in November, you took some FMLA time to care for your parents, and you had an intermittent leave approval, which OSF was fine with, to take additional days that you never took. She never raised a connection. At her deposition, she couldn't explain a connection. Still today, I don't think she can explain a connection between her usage of that FMLA leave and the problems that were happening on her watch while she was in the office. Thank you, Ms. Clark. Mr. Baker, we'll give you two minutes for rebuttal. Mr. Baker, can I ask you to address a hypothetical question real quick? Yes, sir. If a lawyer, let's say a lawyer took FMLA leave for six weeks, and the work backed up for six weeks. The lawyer came off FMLA leave. Does the FMLA allow that lawyer to work six weeks behind for the rest of her career? In other words, court dates come and go, and the lawyer says, I didn't have to file it on that date because I was on FMLA leave, and that put me six weeks behind, so I never have to get caught up. And if you require me as my law firm, my employer, to get caught up, you've interfered with that six-week block of time. There's so many different permutations on that. First of all, if you're talking about a huge law firm, because the FMLA only applies to employers who have over 50 employees. Right. And so in my law firm, where it's just myself and my father, it's going to be, you know, I'm not getting any FMLA leave. At a large law firm, I think it's expected that when somebody goes on an FMLA leave that is a block, that they're going to probably work with somebody to make sure that those issues are covered. I mean, I think we have an independent ethical obligation. I guess what I'm saying is, are they protected forever because they took FMLA leave? Are they protected from bad performance reviews because they took FMLA leave? And if they're not, where do we draw the line? Well, I don't know that it's forever. But, again, I don't think that this was forever. And I think that there is a dispute of fact on how many days we're off. And in the court's opinion, there's a footnote on that reflecting the dispute. So I do think that's footnote three in the district court's opinion. I also want to talk about this whole, real quick, this issue of employees being on pins and needles and that this was the issue. If that were the issue, that all these employees were scared to death of her, that's not part of the performance improvement plan. The performance improvement plan, as she testified, she was told, look, we're going to move up these deadlines that you have. The performance improvement plan is not, hey, these employees are having all of these issues with you. So if this is really the concern, that would have been added in then. That would have been added into her performance evaluation. Our view is a jury can look at that and say, hey, look, this is just an ex post facto justification that is nice for them to be able to throw out at the time of litigation. I've exceeded my time greatly. I appreciate the consideration of the court. And unless there's any other questions, I'll sit down. And I ask that the court reverse and remand the case for a trial on these issues. Thank you, Mr. Baker. Thank you, Your Honor.